UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                                  :

CHIVALRY FILM PRODUCTIONS and
JOSEPH ARDITO,

                        Plaintiffs,

                                                              05 Civ. 5627 (GEL)

  -against-

                                                                **OPINION AND ORDER**

NBC UNIVERSAL, INC., et al.,

                       Defendants.

------------------------------------------------------------x

Joseph Ardito, pro se.

Stephen F. Huff, Tom J. Ferber, Mark A. Tamoshunas, Richard J. Purcell, Pryor Cashman Shearman & Flynn LLP, New York, New York, for defendants.

GERARD E. LYNCH, District Judge:

      In this copyright infringement action, pro se plaintiff Joseph Ardito charges that defendants, a number of motion picture production and distribution companies, infringed his copyrights.[1] Defendants move for summary judgment dismissing plaintiff's claim, arguing that the allegedly infringing films are independently created works that no reasonable juror could find substantially similar to plaintiff's copyrighted material. Defendants' motion will be granted.

---

[1] On January 11, 2006, this Court dismissed plaintiff's various other causes of action at the pleading stage. Chivalry Film Prods. v. NBC Universal, Inc., No. 05 Civ. 5627, 2006 WL 89944 (S.D.N.Y. Jan. 11, 2006). In this Opinion, as in that one, the Court refers to plaintiff in the singular, since the co-plaintiff named in the pleading is a sole proprietorship having no legal existence independent of Ardito himself. See id. at *1 n.1.

Plaintiff charges that two movies produced and distributed by certain of the defendants, *Meet the Parents* and its sequel *Meet the Fockers*, infringe his copyrights in several versions of a novel and screenplay entitled variously *The Tenant* or *The Dysfunctionals* (hereafter collectively "*The Tenant*").

To establish copyright infringement, plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 693, 699 (2d Cir. 1998). Copying may be established either through direct evidence of copying or through indirect evidence, including "'similarities that are probative of copying between the works.'" Hogan v. DC Comics, 48 F. Supp. 2d 298, 308 (S.D.N.Y. 1999), quoting Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998). Defendants do not dispute that plaintiff holds valid copyrights in the various versions of *The Tenant*. They argue, however, that no reasonable finder of fact could find copying, because the works are not substantially similar, and because plaintiff has failed to raise a genuine issue of fact with respect to defendants' claim of independent creation. Defendants are right on both grounds.[2]

---

[2] Defendants also claim there is no evidence that any defendant had access to *The Tenant*. Indeed, plaintiff offers no evidence whatsoever that any defendant ever saw any of his works, asserting only that while visiting Los Angeles in 1998, and staying with a friend of his attorney, his bags were broken into and ransacked by unknown individuals, and "[v]arious project outlines were missing." (P. Rule 56.1 Stmt. ¶ 8.) Even assuming that a thief took or read a version of *The Tenant* (something not expressly asserted in plaintiff's statement), there is absolutely no evidence that any defendant ever came into possession of that material. Nevertheless, because plaintiff may not have had an adequate opportunity to take discovery of defendants on this issue, the Court declines to rely on the absence of evidence of access as a ground for summary judgment.

Summary judgment may be granted on a copyright infringement claim when "no reasonable trier of fact could find the works substantially similar." Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (citation and internal quotation marks omitted).  That is precisely the case here.

The works at issue could not be more different in "total concept and feel."  Green v. Lindsay, 885 F. Supp. 469, 481-82 (S.D.N.Y. 1992).  Defendants' movies are farcical situation comedies in which a young man encounters various embarrassing calamities while trying to win over the parents of his fiancée, and in which the parents of the engaged couple, who represent opposing cultural and political stereotypes, seek to become comfortable with each other.  In the tradition of slapstick comedies, exaggerated disasters ensue from the encounters among the protagonists, but the tone is light, no one suffers lasting damage, and the situations resolve happily with the former antagonists achieving grudging mutual respect and accommodation.  The works are designed as light entertainment for a mainstream audience.

Plaintiff's work is more in the violent horror genre.  Any humor in the work is, in plaintiff's own words, "sick humor." (Ferber Decl. Ex. F.)  The prologue to the novel version warns that "[i]f you find the material contrary to your taste, vile, abusive and pornographic, the author has achieved his objective" (id. Exs. F, G), and the work more or less lives up to that claim.  The work follows a common theme in the horror genre, that of the unwitting "normal" protagonist thrown together with a group of violent sociopaths, who torment and torture him.  The plot involves three brothers, their sister and their father, whose back story involves extraordinary intrafamily violence and abuse, depicted at considerable length.  (See, e.g., id. Ex. J at 20-23.)  The eponymous tenant rents a room in the house from one of the brothers, who

repeatedly beat and abuse him, in addition to engaging in extreme violence against various other characters.  (See, e.g., id. at 55-56, 77-78, 101-05, 135-40.)  Eventually, the three brothers are brought to justice and committed to a psychiatric hospital, and the police suspect the tenant of murdering the father, who in fact commits suicide.  (See id. at 137-40.)  The treatment is unrelentingly horrific and is presumably aimed at the popular niche market for graphic tales of violence.

      Plaintiff attempts to show similarity by providing a long chart of alleged similarities between specific scenes in his work and defendants'.  These parallels, however, involve the most trivial and generic of incidents.  For example, in *Meet the Parents* the fiancée's father ridicules his prospective son-in-law's car, and in *The Tenant* the abusive landlord is critical of his tenant's vehicle.  (See Ardito Decl. at 6.)  Even if the scenes were otherwise similar, there is nothing original in either scene; the events are simply minor, generic set pieces establishing the relationships between the parties through common experiences relating to cars.  In any event, the scenes are not even that similar.  Apart from the differences in tone, the father in defendants' film sneers at the make and color of the car, thus making his daughter's suitor feel embarrassingly outclassed in wealth and taste, while in plaintiff's work the villain objects to the protagonist's choice of a standard shift, because he might "need to borrow [the tenant's] car," thus establishing his assumed power over his tenant's property.  (Id.)  The scenes are thus strikingly different.  Plaintiff offers scores of such specious similarities, all of which can be similarly deconstructed.

      The characters, pace, settings, themes and plots of the two sets of materials are in fact so extraordinarily different that plaintiff is reduced to arguing that copying can be proved by the

*absence* of similarity, alleging that defendants "blatantly went through extremes in revisions and manipulation in an attempt to conceal and subterfuge said crime by revising said screenplay." (Compl. ¶ 1960.)  But this claim is self-defeating.  As the Second Circuit has held, "[e]ven if an alleged copy is based on a copyrighted work, 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.'"  Eden Toys, Inc. v. Marshall Field & Co., 675 F.2d 498, 501 (2d Cir. 1982), quoting Warner Bros. v. Am. Broad. Cos., 654 F.2d 204, 210 (2d Cir. 1981) (additional citation omitted).  In short, no reasonable fact-finder could conceivably find the works so substantially similar as to warrant an inference that one was copied from the other.

Summary judgment is also appropriate because defendants can establish an independent source for their films pre-dating *The Tenant*.  Defendants' works do not pretend to be wholly original.  They are based on an earlier film, also called *Meet the Parents*, that was made and copyrighted in 1991, and to which defendants acquired the rights in 1994.  (See Ferber Decl. Ex. E; Tamoshunas Decl. Ex. C.)  Plaintiff's earliest copyright for *The Tenant* dates to 1996.  (See Ardito Decl. ¶ 10; id. Ex. A.)  Unlike *The Tenant*, the earlier version of *Meet the Parents* shares a similar theme and tone with defendants' film; the similarity extends to the very names of the principal characters in the two versions.  While plaintiff attempts to discredit defendants' claim by pointing to various differences between the two versions of *Meet the Parents*, those differences are far less striking than the differences between either version and plaintiff's work, and the similarities between the two versions of *Meet the Parents* are far more striking.  No reasonable fact-finder could conclude that the challenged works derived from *The Tenant*, rather

5

than from the earlier *Meet the Parents* film and screenplay. Summary judgment is appropriate where a plaintiff fails to offer evidence sufficient to raise a factual question about a defendant's proof of independent creation, including "re-creation" from an independent pre-existing source. See Novak v. Nat'l Broad. Co., 760 F. Supp. 47, 48 (S.D.N.Y. 1991).

Accordingly, defendants' motion for summary judgment is granted.

SO ORDERED.

Dated: New York, New York
December 22, 2006

GERARD E. LYNCH
United States District Judge